UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE RODRIGUEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THORATEC CORPORATION, et al., <br><br> Defendants. | Case No. 26-cv-01653-JSC <br><br> **ORDER RE: DEFENDANTS' MOTION TO TRANSFER** <br><br> Re: Dkt. No. 13 |

Plaintiffs, survivors of Renne Rodriguez ("Decedent"), allege Defendants' medical device malfunctioned and caused Decedent's death. (Dkt. No. 1-1 at 8-23.)[1] Now pending before the Court is Defendants' motion to transfer venue to the U.S. District Court for the Northern District of Texas. (Dkt. No. 13.) Having carefully considered the parties' submissions, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the April 30, 2026 hearing, and GRANTS Defendants' motion to transfer. The Northern District of Texas has personal jurisdiction over Defendants, subject matter jurisdiction over Plaintiffs' claims, and proper venue. And because the Northern District of Texas is a more convenient forum for Plaintiffs and third-party witnesses, has greater familiarity with Plaintiffs' state law claims, has a stronger local interest in the controversy, and is slightly less congested, convenience and fairness weigh in favor of transfer.

## BACKGROUND

On January 20, 2026, Plaintiffs sued Thoratec Corporation ("Thoratec"), SJM Thunder

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

United States District Court
Northern District of California

Holding Company ("SJM Thunder"), and Abbott Cardiovascular ("Abbott")[2] in the California Superior Court for Alameda County. (Dkt. No. 1-1 at 8-23.) Plaintiffs allege Decedent, a Texas resident, "was implanted with the Heartmate 3 device" on November 8, 2023 and died on January 17, 2024 "secondary to a malfunction of the Heartmate 3 device." (*Id.* at 8.) According to Plaintiffs, Thoratec and Abbott "designed, set specifications for, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Heartmate 3 . . . device implanted in [Decedent]." (*Id.* at 9.) Plaintiffs also allege Thoratec is a California corporation with its principal place of business in California, Abbott is a Delaware corporation with its principal place of business in Illinois, and SJM Thunder is Thoratec's sole member and a Delaware corporation with its principal place of business in Illinois. (*Id.* at 9-10.) Plaintiffs, including Decedent's spouse Julie Rodriguez and children Emily Kathleen Renee Rodriguez and George Lee Esteban Ramon Rodriguez, assert claims for: (1) strict liability failure to warn under Texas state law, (2) negligence under Texas state law, (3) wrongful death, and (4) survival. (*Id.* at 8-9, 16-23.)

Defendants removed the case to this Court based on diversity jurisdiction. (Dkt. No. 1.) Defendants declare Thoratec is not a corporation but rather an LLC whose sole member is SJM Thunder, and there is no legal entity named Abbot Cardiovascular, but Abbott Cardiovascular Inc. is an inactive Delaware corporation whose principal place of business was in Illinois. (Dkt. No. 1-2 ¶¶ 8-10, 15-19.) Defendants also present evidence Julie Rodriguez lives, is registered to vote, and has a driver's license in Texas, (Dkt. No. 1-1 at 48-49, 57, 59); George Rodriguez lives in Texas, (*id.* at 51-52); and Emily Rodriguez lives in Arkansas but has a Texas driver's license, (*id.* at 54-55, 61).

Defendants now move to dismiss Plaintiffs' complaint or to transfer Plaintiffs' case to the Northern District of Texas. (Dkt. Nos. 12, 13.)

**DISCUSSION**

"For the convenience of parties and witnesses, in the interest of justice, a district court may

---

[2] Plaintiff's complaint refers to "Abbott Cardiovascular" and "Abbott Vascular, Inc." interchangeably.

transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) exists to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotation marks and citation omitted). "District courts use a two step analysis to determine whether a transfer is proper." *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006). "The threshold question under section 1404(a) requires the court to determine whether the case could have been brought in the forum to which the transfer is sought." *Id.* (citing 28 U.S.C. § 1404(a); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985)). "If venue would be appropriate in the transferee court, then the court must make an 'individualized, case-by-case consideration of convenience and fairness.'" *Id.* (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)).

The burden is on the moving party to show transfer of venue is appropriate. *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). In deciding a motion to transfer venue, courts may consider evidence beyond the complaint. *See Washington Pub. Utils. Grp. v. U.S. District Court for the Western District of Washington*, 843 F.2d 319, 327 (9th Cir. 1987) (finding "sufficient evidence in the record" supporting a factor in a motion to transfer venue); *see also Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds by Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) (noting for motions to dismiss for lack of personal jurisdiction, "[t]he court may consider evidence presented in affidavits to assist it in its determination").

### A.    Jurisdiction and Venue in the Northern District of Texas

"[T]he power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). So, "[f]or a court to transfer venue pursuant to section 1404, the movant must first show that the transferee court is one in which the original action could have been brought." *See W. Digital Techs., Inc. v. Bd. of Regents of the Univ. of Texas Sys.*, No. C 10-3595 SBA, 2011 WL 97785, at *3 (N.D. Cal. Jan. 12, 2011) (citation

omitted).  "An action 'might have been brought' in a court that: (1) is able to exercise personal jurisdiction over the defendants, (2) has subject matter jurisdiction over the claim, and (3) would be a proper venue." *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, No. C 09-03529 JSW, 2010 WL 1136279, at \*1 (N.D. Cal. Mar. 22, 2010) (citing *Hoffman*, 363 U.S. at 343-44).

### 1.    Personal Jurisdiction

Because "[t]he Texas long-arm statute extends to the limits of the Constitution," the Northern District of Texas's personal jurisdiction "inquiry is [] limited to the reach of the Fourteenth Amendment's Due Process Clause." *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008) (citation omitted).  "The Fourteenth Amendment allows a court to assert personal jurisdiction over defendants who have meaningful 'contacts, ties, or relations' with the forum state." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  "Such contacts can give rise to general or specific jurisdiction." *Id.*

General jurisdiction exists when "a defendant ha[s] 'sufficiently systematic and continuous contacts with the forum state, . . . such that the defendant feels 'at home' in the forum state.'" *See Pace v. Cirrus Design Corp.*, 93 F.4th 879, 898 (5th Cir. 2024) (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986); *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).  "A corporation is at home where its place of incorporation and its principal place of business are located." *Id.* (citing *Daimler AG*, 571 U.S. at 137).  And where an LLC is at home "is determined by the citizenship of its members." *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).  "General jurisdiction can also be present when 'exceptional' circumstances allow a corporate defendant's operations to 'be so substantial and of such a nature as to render the corporation at home in' the forum." *Pace*, 93 F.4th at 898 (quoting *Daimler AG*, 571 U.S. at 139 n.19).  SJM Thunder and Abbott are Delaware corporations with their principal place of business in Illinois.  (Dkt. No. 1-1 at 9-10; Dkt. No. 1-2 ¶¶ 11, 16-17.)  And Thoratec is either a California corporation with its principal place of business in California, (Dkt. No. 1-1 at 9), or an LLC whose only member is SJM Thunder, (Dkt. No. 1-2 ¶¶ 8-10).  Furthermore, no party contends exceptional circumstances render Defendants at home in Texas.  So, the Northern District of Texas

does not have general jurisdiction over any Defendant.

However, the Northern District of Texas does have specific jurisdiction over at least Thoratec. "[S]pecific jurisdiction exists when a defendant purposefully avails itself of the privilege of conducting activities within a forum state, the plaintiff's claims arise out of or relate to the defendant's 'minimum contacts,' and maintaining the suit would not offend traditional notions of fair play and substantial justice." *Pace*, 93 F.4th at 900 (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-60 (2021)). In products liability cases, the "stream of commerce" doctrine "recognizes that a defendant may purposefully avail itself of the protection of a state's laws—and thereby will subject itself to personal jurisdiction—'by sending its goods rather than its agents' into the forum." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (quoting *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011)); *see also Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 289-90 (5th Cir. 2020) ("[M]inimum contacts [is] satisfied so long as the court determines 'that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased or used by consumers in the forum state" (quoting *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013))). When a defendant has minimum contacts, courts consider whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice by considering factors such as "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *See Gundle Lining Const. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 207 (5th Cir. 1996) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *Asahi Metal Indus. Co. v. Superior Ct. of California*, 480 U.S. 102, 113 (1987)).

The parties agree Thoratec is "responsible for the manufacture[], sale, and distribution of the HeartMate 3 at issue in this action." (Dkt. No. 1-2 ¶ 9; *see also* Dkt. No. 1-1 ¶ 4 ("Thoratec . . . manufactured, . . . distributed, and sole the Heartmate 3 LVAD System . . . implanted in [Decedent].").) Defendants also declare, and Plaintiffs do not dispute, Decedent "was implanted

5

with the HeartMate 3 device at issue in this case in Texas, [] was treated in Texas, and passed away in Texas." (Dkt. No. 13-1 ¶ 3; *see also id.* ¶ 4 (explaining doctor implanted the device at a hospital in Plano, Texas).)  So, Thoratec LLC purposefully availed itself of the Texas forum by manufacturing, selling, and distributing the HeartMate 3 at issue to a Texas hospital where a doctor implanted the device in a Texas resident.  And because Plaintiffs' claims are based on allegations "Decedent died . . . secondary to the Heartmate 3 developing low flow followed by sudden loss of flow," (Dkt. No. 1-1 ¶ 38), Plaintiffs' claims arise out of and relate to Thoratec's contacts with Texas.  Finally, the Court agrees with Defendants the Northern District of Texas's exercising jurisdiction over Thoratec would not offend traditional notions of fair play and substantial justice given "Texas's strong interest in . . . the distribution and sale of the device at issue into a Texas hospital, implantation, medical care, alleged malfunction, and death in Texas, and critical nonparty medical witnesses and records [] located there." (Dkt. No. 23 at 5.)

Although SJM Thunder and Abbott claim they "have no suit-related contacts supporting specific personal jurisdiction," they "consent to specific personal jurisdiction in the Northern District of Texas for the limited purposes of this case." (*Id*. at 2.)  Because the "personal jurisdiction requirement is a waivable right," a defendant may "consent to the personal jurisdiction of the court." *See Burger King Corp.*, 471 U.S. at 473 n.14 (quotation marks and citation omitted).  Given their consent, the Northern District of Texas can exercise personal jurisdiction over SJM Thunder and Abbott.  *See also Grande v. Knauf Gips KG & Knauf New Bldg. Sys. (Tianjin) Co.*, No. CV H-21-3287, 2022 WL 5434325, at *5 (S.D. Tex. June 23, 2022) (holding a defendant's "consent[] to a § 1404(a) transfer" waives subsequent "challenge[s] to the transferee court's exercise of personal jurisdiction").

So, the Northern District of Texas may exercise personal jurisdiction over Defendants.

### 2.    Subject Matter Jurisdiction

The Northern District of Texas will have diversity subject matter jurisdiction over Plaintiffs' claims.  Federal subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires complete diversity of citizenship and an amount in controversy in excess of $75,000.

As to complete diversity, Plaintiffs do not dispute Defendants' evidence each Plaintiff is a

Texas or Arkansas citizen. (Dkt. No. 1-1 at 48-61 (residence, driver's license, and voter registration records).) *See Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011) ("[T]he state where someone establishes his domicile serves a dual function as his state of citizenship. . . . Evidence of a person's place of residence [] is prima facie proof of his domicile." (cleaned up)). And as explained above, SJM Thunder and Abbott are Illinois and Delaware citizens, and Thoratec is either a citizen of Illinois and Delaware, or of California. So, there is complete diversity of citizenship.

Even if a plaintiff does not specifically allege the amount of damages, the amount in controversy requirement is met "if it is facially apparent from the plaintiffs' complaint that their claims are likely above $75,000." *See Garcia v. Koch Oil Co. of Texas Inc.*, 351 F.3d 636, 639 (5th Cir. 2003) (cleaned up). The Fifth Circuit has held it is "facially apparent that each plaintiff's wrongful death claim satisfies the amount in controversy requirement" when a decedent's children seek damages for mental pain and suffering, and the decedent's spouse seeks damages for loss of companionship and consortium. *See Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 67 (5th Cir. 2010) (citing *De Aguilar v. Boeing Co.*, 11 F.3d 55, 57 (5th Cir. 1993) (finding it "facially apparent . . . claims for wrongful death, terror in anticipation of death, loss of companionship, and funeral expenses [] exceed[ed] $50,000"); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (finding it facially apparent personal injury damages including medical care, pain and suffering, and loss of work exceeded $75,000); *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (finding it facially apparent "damages for medical expenses, physical pain and suffering, mental anguish and suffering, . . . [and] loss of wages" exceeded $75,000)); *see also Boulanger v. Devlar Energy Mktg., LLC*, No. 3:15-CV-3032-B, 2015 WL 7076475, at *8-9 (N.D. Tex. Nov. 13, 2015) (finding it facially apparent claims for wrongful death, survivorship, personal injury, and punitive damages will exceed $75,000). Here, Plaintiffs' complaint does not specify a damages amount, but Plaintiffs seek general damages "including pain and suffering, mental anguish, loss of companionship, and parental guidance"; special damages including "past medical expenses and wage loss"; interest; costs of suit; punitive damages; and other appropriate relief. (Dkt. No. 1-1 at 23.) So, because the three Plaintiffs bring claims for wrongful death and

7

survivorship, and also seek damages for loss of work and medical expenses, as well as punitive damages, it is facially apparent each Plaintiff's claims will exceed $75,000.

So, the Northern District of Texas will have subject matter jurisdiction over Plaintiffs' claims.

### 3.    Venue

Under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *See* 28 U.S.C. § 1391(b)(2). Based on device tracking records, Defendants declare Decedent was implanted with the HeartMate 3 device at a hospital in the Northern District of Texas. (Dkt. No. 13-1 ¶¶ 4-6.) Because Plaintiffs' product liability and wrongful death claims arise from the HeartMate 3's implantation in Texas, venue is proper in the Northern District of Texas.

* * *

Plaintiffs' case therefore could have been brought in the Northern District of Texas.

### B.    Section 1404(a) Factors

Under 28 U.S.C. § 1404(a), courts must next make an "individualized, case-by-case consideration of convenience and fairness." *See Jones*, 211 F.3d at 498 (quotation marks and citation omitted). Courts may consider factors such as:

> (1) plaintiffs' choice of forum,
> (2) convenience of the parties,
> (3) convenience of the witnesses,
> (4) ease of access to the evidence,
> (5) familiarity of each forum with the applicable law,
> (6) feasibility of consolidation with other claims,
> (7) any local interest in the controversy, and
> (8) the relative court congestion and time to trial in each forum.

*Biederman v. FCA US LLC*, No. 3:23-CV-06640-JSC, 2024 WL 2818854, at *2 (N.D. Cal. June 3, 2024) (citing *Jones*, 211 F.3d at 498-99).

### 1.    Plaintiff's Choice of Forum

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). "But, '[t]he

United States District Court
Northern District of California

8

degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff does not reside in the venue or where the forum lacks a significant connection to the activities alleged in the complaint.'" *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (citation omitted); *see also Piper Aircraft Co.*, 454 U.S. at 255 ("[T]he presumption applies with less force when the plaintiff or real parties in interest are foreign.").

Although Plaintiffs' choice of this Court ordinarily would weigh strongly against transfer, their choice is entitled to less deference because Plaintiffs do not reside in California.  Plaintiffs contend because Thoratec did "the work related to the design, regulatory submissions, manufacturing, distribution and post-market surveillance for the at issue device" in the Northern District of California, (Dkt. No. 19 at 4), this forum maintains "a significant connection to the activities alleged." *See Williams*, 157 F. Supp. 3d at 1106.  However, Texas also maintains a significant connection to the alleged conduct because Plaintiffs' claims arise from Decedent's receipt of a HeartMate 3 device, medical treatment, and subsequent death in Texas.  Ultimately, given Plaintiffs do not reside in this District, Plaintiffs' choice of this forum does not weigh against transfer.

### 2.      Convenience of the Parties

The Northern District of Texas is a more convenient forum for Plaintiffs because they live in Texas and Arkansas.  As to Defendants, neither forum is more convenient for SJM Thunder and Abbott, which are citizens of Delaware and Illinois.  And although the parties dispute whether Thoratec is a citizen of Delaware and Illinois or California, Plaintiffs' "primary concern is the ability to compel Thoratec [] witnesses to testify live at trial" in the Northern District of Texas. (Dkt. No. 19 at 5.)  But Defendants concede "as the party seeking transfer to the Northern District of Texas, Thoratec [] will not refuse to produce any otherwise proper company witness in the Northern District of Texas on the basis of distance from the forum or that the witness is not subject to compulsory process in the Northern District of Texas." (Dkt. No. 20 at 3.)  So, the convenience of the parties weighs in favor of transfer.

### 3.      Convenience of the Witnesses

"The convenience of the witnesses 'is often the most important factor considered by the

United States District Court
Northern District of California

United States District Court
Northern District of California

court when deciding a motion to transfer for convenience.'" *Nat. Wellness Ctrs. of Am., Inc. v. J.R. Andorin Inc.*, No. 11-04642 EDL, 2012 WL 216578, at *11 (N.D. Cal. Jan. 24, 2012) (citation omitted). According to Defendants, the key witnesses are Plaintiff's health care providers in Texas, including the doctor who implanted the Heartmate 3 device. *See Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 763 (C.D. Cal. 2016) (explaining "diagnosing and treating physicians" are "crucial" witnesses in "product liability cases" in which "medical causation is a critical issue" (cleaned up)). However, Plaintiffs contend the key witnesses are Thoratec employees who work in California. Ultimately, "[t]he primary consideration is for the convenience of third party witnesses, and not employee witnesses." *Nat. Wellness Ctrs. of Am., Inc.*, 2012 WL 216578, at *11 (citation omitted); *see also Rubio*, 181 F. Supp. 3d at 763 ("The Court accords more weight to the inconvenience of non-party witnesses, as party witnesses can be compelled to testify regardless of the forum." (citations omitted)). And, as stated above, Defendants also concede Thoratec "will not refuse any otherwise proper company witness in the Northern District of Texas on the basis of distance from the forum or that the witness is not subject to compulsory process in the Northern District of Texas." (Dkt. No. 20 at 3.) So, given convenience of the third party witnesses, this factor weighs in favor of transfer.

### 4.    Ease of Access to Evidence

Defendants contend Decedent's medical records, which are located in Texas, comprise the key evidence. In contrast, Plaintiffs focus on Thoratec's "evidence related to the premarket application, the required design and manufacturing requirements listed in the premarket approval, the design of the device, post-market surveillance investigations regarding adverse events, and communications with the FDA . . . most likely located in Pleasanton, California." (Dkt. No. 19 at 6.) Ultimately, because important evidence may exist in both fora, and because "[w]ith technological advances in document storage and retrieval, transporting documents does not generally create a burden," this factor is neutral. *See Van Slyke v. Cap. One Bank*, 503 F. Supp. 2d 1353, 1362 (N.D. Cal. 2007).

### 5.    Familiarity of the Forum with the Law

"There is an appropriateness . . . in having the trial of a diversity case in a forum that is at

United States District Court
Northern District of California

home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Van Dusen*, 376 U.S. at 645 (1964) (quotation marks and citation omitted). Although Plaintiffs do not clarify which state's laws apply to their wrongful death and survival claims, Plaintiffs assert strict liability and negligence claims under Texas law. (Dkt. No. 1-1 at 16-22.) So, the Northern District of Texas's greater familiarity with Texas state law weighs in favor of transfer.

### 6. Local Interest in Controversy

Texas undoubtably has a strong interest in this case given Plaintiffs allege Defendants' device, distributed to a Texas hospital, caused Decedent, a Texas resident, to die within its borders. *See Sims v. Kia Motors Am., Inc.*, No. SACV 13-01269-CJC (JPRx), 2014 WL 12599800, at *3 (C.D. Cal. Jan. 24, 2014) ("Texas's interest in vindicating the rights of its citizens with respect to claims arising out of conduct that allegedly caused a fatality within its borders is significant, and must be yielded to by this Court."). Although Plaintiffs argue California has an interest in regulating products manufactured in California which harm nonresidents outside California, such an interest is decidedly weaker. *Cf. Hurtado v. Superior Court*, 11 Cal. 3d 574, 584 (1974) ("California has a decided interest in applying its own law to California defendants who allegedly caused wrongful death *within its borders*." (emphasis added)); *Hemmelgarn* v. *Boeing Co.,* 106 Cal. App. 3d 576, 588 (1980) ("Obviously, California has a significant interest where defective products manufactured in this state cause injury *to California residents*." (emphasis added)). So, the Northern District of Texas's greater interest in the controversy weighs in favor of transfer.

### 7. Court Congestion and Time to Trial

Plaintiffs argue this factor weighs against transfer because the Northern District of California has more judges than the Northern District of Texas, but "the relevant factors courts consider in a motion to transfer are: (1) relative court congestion; and (2) time to trial in each forum." *See D.L. Markham, DDS, MSD, Inc. v. Variable Annuity Life Ins. Co.*, No. 2:21-CV-00007-TLN-KJN, 2022 WL 891290, at *9 (E.D. Cal. Mar. 25, 2022) (citation omitted). As of December 31, 2025, the Northern District of California had 1,168 pending cases and 725 weighted

filings per judgeship, while the Northern District of Texas had 536 pending cases and 638 weighted filings per judgeship. *See U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics* (December 31, 2025), available at https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf (last visited April 20, 2026). And the median time for disposition of civil cases was 38.9 months in the Northern District of California, in contrast to 24.4 months in the Northern District of Texas. *See id.*; *see also Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 941 (N.D. Cal. 2020) (relying on similar statistics). So, court congestion and time to trial weigh slightly in favor of transfer to the Northern District of Texas.

* * *

Because the Northern District of Texas is a more convenient forum for Plaintiffs and third-party witnesses, has greater familiarity with Plaintiffs' state law claims, has a stronger interest in the controversy, and is slightly less congested, the section 1404(a) factors weigh in favor of transfer.

### CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to transfer venue to the Northern District of Texas. The Court therefore does not rule on Defendants' motion to dismiss. (Dkt. No. 12.) The Clerk is directed to transfer this action to the United States District Court for the Northern District of Texas.

This Order disposes of Docket No. 13.

**IT IS SO ORDERED.**

Dated: April 20, 2026

JACQUELINE SCOTT CORLEY
United States District Judge